Andrew C. DeWeese, OSB 136332
Kevin J. Jacoby, OSB 063783
Green Light Law Group
1300 SW 5th Avenue, Suite 3600
Portland, OR 97201
andrew@gl-lg.com
kevin@gl-lg.com
Telephone: (503) 488-5424
Facsimile: (503) 296-5889
*Of Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| JEFFERSON PACKING HOUSE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>KATE BROWN, in her official capacity as Governor of the State of Oregon, ELLEN ROSENBLUM, in her official capacity as Attorney General of the State of Oregon, and STEVE MARKS, in his official Capacity as Executive Director of the Oregon Liquor and Cannabis Commission,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiff JEFFERSON PACKING HOUSE, LLC ("JPH") files this complaint for Declaratory and Injunctive Relief against KATE BROWN, in her official capacity as Governor of the State of Oregon, ELLEN ROSENBLUM, in her official capacity as Attorney General of the State of Oregon, and STEVE MARKS, in his official Capacity as Executive Director of the Oregon Liquor and Cannabis Commission, and states as follows:

Page 1 – COMPLAINT

## SUMMARY OF CLAIM

1. Oregon was the first state to decriminalize marijuana, in 1973, in 1998 was the second state to legalize marijuana for medical use, and today boasts one of the most renowned marijuana industries in the world, producing unsurpassed usable marijuana flower and a wide variety of marijuana products.

2. The high quality of Oregon's production industry is owed to several factors. First, Oregon has a long tradition of illicit marijuana cultivation. Since the cannabis sativa plant can express vastly diverse phenotypes depending upon the interaction of its complex genotype with the cultivation environment, cannabis breeders are able to produce marijuana cultivars with stunningly diverse qualities, aromas, and characteristics, depending upon what is desirable in the market and/or to the grower. As a result, while most cannabis in the 1960's and 1970's were wild Thai or Afghani landrace cultivars with long, stringy structure, thin flower buds and having spicy or skunky aromas, Oregon breeders produced cultivars with berry and fruit aromas, higher THC content, and squatter, fatter, more compact flowers and structure, the easier to pack plants into basements and other hidden grow locations.

3. When Oregon voters approved Measure 91, legalizing recreational cannabis subject to regulation by the OLCC, the regulatory apparatus put in place purposefully minimized barriers to entry to attain licensure and did not initially cap the number of licenses the OLCC could issue. Oregon law also does not prohibit the number of marijuana businesses which can be owned by a business or individual. The purpose of this approach was to allow Oregon to legalize and regulate the existing marijuana industry it already had, rather than to create a new, legal industry in place of an existing one (such as in the case of Washington State, which awarded its marijuana licenses via lottery, and others). This approach has encouraged fierce competition among Oregon marijuana businesses, resulting in high general product quality and extremely low average price relative to other states,

because they are all competing to serve a relatively small local market.

4. Oregon law requires that all marijuana batches sold to consumers pass analytical tests for pesticides, water activity / moisture content, mycotoxins, and content of Delta-9 THC, Delta-9 THCa, CBD, and CBDa, and in March 2023 will add the requirement to be tested for heavy metals and microbiological contaminants.

5. Oregon's state recreational marijuana program is administrated by the Oregon Liquor and Cannabis Commission ("OLCC"), which issues and administrates marijuana production, processing, wholesale, retail and laboratory licenses. Total recreational marijuana sales in Oregon exceed $4.1 billion since October 2016, with $1.184 billion in sales in 2021 alone.

6. Despite these sales and the notably high quality of Oregon marijuana products, many OLCC licensees are prevented from realizing their full economic potential because they are prohibited by state law from exporting their products out of state. ORS 475C.001(c); ORS 475.229.

7. The self-evident purpose of the ban on export is to keep Oregon marijuana and marijuana products within the state of Oregon, discriminating against Oregon marijuana growers, processors, and wholesalers, like JPH, by denying them the opportunity to market and sell their products in other states. The export ban harms not only Oregon growers, processors, and wholesalers, but also non-residents, who are denied access to the high-quality marijuana products created in Oregon unless they physically travel to Oregon to purchase those products.

8. The export ban should be struck down because it violates the dormant Commerce Clause of the United States Constitution by discriminating against and unduly burdening interstate commerce.

**PARTIES AND JURISDICTION**

9. Plaintiff JEFFERSON PACKING HOUSE, LLC ("JPH") is an Oregon limited liability company, located in Jackson County, Oregon, that holds a recreational marijuana wholesaler

Page 3 – COMPLAINT

license under Oregon law.

10. JPH would export marijuana and marijuana products to other states with legal marijuana programs if Oregon's export ban did not prohibit it from doing so.

11. The export ban harms JPH by significantly limiting its available customer base and drastically increasing its costs by preventing it from taking advantage of economies of scale.

12. Kate Brown is the Governor of Oregon and is ultimately responsible for enforcing ORS 475C.229.

13. Ellen Rosenbaum is the Attorney General of Oregon and is responsible for enforcing ORS 475C.229.

14. Steve Marks is the Executive Director of the OLCC. Based on ORS 475C.229, the OLCC's rules and policies prohibit marijuana licensees from exporting marijuana and marijuana products, and Director Marks is responsible for enforcing ORS 475C.229 through those rules and policies.

15. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since JPH has asked it to rule that Oregon's export ban violates the United States Constitution.

**OREGON'S EXPORT BAN IS UNCONSTITUTIONAL**

16. ORS 475C.229 and ORS 475C.001(2)(c) (collectively, the "export ban") expressly privilege Oregon residents over non-residents, unambiguously prohibiting any export or import of marijuana from or to Oregon. ORS 475C.001 is entitled "Purposes of ORS 475C.005 to 475.525." (i.e., the section of ORS Chapter 475C regulating recreational cannabis). ORS 475C.001(2)(c) provides:

> (2) The People of the State of Oregon intend that the provisions of ORS 475C.005 to 475C.525, together with other provisions of state law, will:
> \* \* \*
> (c) Prevent the diversion of marijuana from this state to other states;

17. Likewise, ORS 475.229 provides:

**475C.229 Prohibition against importing or exporting marijuana items.** (1) For purposes of this section:
    (a) "Export" includes placing a marijuana item in any mode of transportation for hire, such as luggage, mail or parcel delivery, even if the transportation of the marijuana item is intercepted prior to the marijuana item leaving this state.
    (b) "Marijuana item" includes an industrial hemp commodity or product that exceeds the greater of:
        (A) A concentration of 0.3 percent total delta-9-tetrahydrocannabinol; or
        (B) The concentration of total delta-9-tetrahydrocannabinol allowed under federal law.
(2) A person may not import marijuana items into this state or export marijuana items from this state.
(3) A violation of this section is a Class B violation, except:
    (a) As provided in subsection (4) of this section; or
    (b) If the item is industrial hemp and does not exceed a total delta-9-tetrahydrocannabinol concentration of one percent.
(4) A violation of this section is a:
    (a) Class A misdemeanor, if the importation or exportation:
        (A) Is not for consideration and the person holds a license issued under ORS 475C.065, 475C.085, 475C.093 or 475C.097; or
        (B) Concerns an amount of marijuana items that exceeds the applicable maximum amount specified in ORS 475C.337 (1)(a) to (f).
    (b) Class C felony, if the importation or exportation:
        (A) Is for consideration and the person holds a license issued under ORS 475C.065, 475C.085, 475C.093 or 475C.097;
        (B) Concerns an amount of marijuana items that exceeds 16 times the applicable maximum amount specified in ORS 475C.337 (1)(a) to (f); or
        (C) Concerns a cannabinoid extract that was not purchased from a marijuana retailer that holds a license issued under ORS 475C.097.

18. The export ban discriminates against interstate commerce by nakedly prohibiting such commerce, without any legitimate, nonprotectionist purpose, and is therefore prohibited by the dormant Commerce Clause of the U.S. Constitution ("DCC").

19. There is no constitutionally adequate reason for Oregon, or any other State, to bar the import or export of marijuana.

20. Protecting the local cannabis industry is a purely protectionist motive and is therefore plainly unconstitutional under the DCC.

21. Attempting to appease the perceived enforcement priorities of the federal government

to induce the DOJ to continue its policy of nonenforcement of state-legal marijuana activities (which violate federal law equally as much as interstate commerce in marijuana) implicates fatal separation of powers concerns, as only Congress can authorize the States to regulate interstate commerce, not the DOJ, an agency of the executive branch. "The DOJ cannot use enforcement treats to supply the states with a convenient nonprotectionist excuse for restricting interstate commerce in cannabis because that would be tantamount to authorizing the states to restrict such commerce." Robert A. Mikos, *Interstate Commerce in Cannabis,* 101 B.U. L. Rev. 857 (2021).

22. The export ban is stifling Oregon's marijuana producers and industry participants as they are unable to access the enormous out-of-state demand for their Oregon-produced products.

## COUNT I

### U.S. Const. Art. I, § 8, Cl. 3, 42 U.S.C. § 1983

23. JPH realleges the preceding paragraphs as if fully set forth herein.

24. The U.S. Constitution prohibits state laws that discriminate against citizens of other states.

25. A state law that discriminates against interstate commerce on its face "invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Hughes v. Oklahoma,* 441 U.S. 322, 337 (1979). *See also Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 581 (1997) (strict scrutiny of a law that facially discriminates against non-residents "is an extremely difficult burden, so heavy that facial discrimination by itself may be a fatal defect").

26. ORS 475C.229 and ORS 475C.001(2)(c) expressly seek to regulate interstate commerce in marijuana, by prohibiting it.

27. The export ban does not have a legitimate local purpose.

28. JPH is harmed by the export ban because the law interferes with JPH's ability to enter

into commerce with residents of other states, including in other states where such commerce would, but for an import/export ban, be legal under the laws of that state (i.e., other states which have legal adult use marijuana). The export ban also devalues JPH by significantly limiting the universe of potential customers it can reach. The export ban also harms JPH by preventing it from taking advantage of economies of scale, which would significantly increase its ability to profit.

29. Injunctive and declaratory relief are needed to resolve this dispute between the Defendants and JPH because the export ban violates the United States Constitution and subjects JPH to serious, concrete, and irreparable injuries.

30. Because this is an action to enforce JPH's constitutional rights brought pursuant to 42 U.S.C. § 1983, JPH should receive its reasonable attorneys' fees and costs in the case. *See* 42 U.S.C. § 1988.

## COUNT II

### U.S. Const. Art. I, § 8, Cl. 3, 28 U.S.C. § 2201

31. JPH realleges the preceding paragraphs as if fully set forth herein.

32. JPH has taken the position that the export ban violates the dormant Commerce Clause of the United States Constitution and is thus unenforceable.

33. The export ban directly harms JPH as a marijuana wholesaler because it limits JPH's ability to sell its product to customers outside of Oregon.

34. Defendants have taken the position that the export ban is enforceable and is enforcing the export ban against Oregon's marijuana licensees, such as JPH.

35. An actual controversy exists between Plaintiffs and the Department as to whether the export ban is enforceable. JPH is currently unable to sell marijuana and marijuana products outside the state of Oregon, even though it would do so successfully if legally allowed. This situation hinders JPH's ability to raise capital, frustrates its business plans, and harms it financially.

36. Declaratory and injunctive relief are needed to resolve this dispute between JPH and the Defendants.

37. Under 28 U.S.C. § 2201 the Court has the power to declare the rights of the parties.

**WHEREFORE,** JPH requests that this Court enter judgment:

A) declaring that the export ban, ORS 475C.001(2)(c) and ORS 475C.299, violates the United States Constitution;

B) enjoining Defendants from implementing, enforcing, or giving any effect to the residency requirement for dispensaries;

C) awarding JPH its attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

D) granting such other and further relief as the Court deems just and proper.

Dated: November 14, 2022  Respectfully submitted,

**GREEN LIGHT LAW GROUP**

By: */s/ Andrew C. DeWeese*
Andrew C. DeWeese, OSB 136332

By: */s/ Kevin J. Jacoby*
Kevin J. Jacoby, OSB 063783
1300 SW 5th Avenue, Suite 3600
Portland, OR 97201
andrew@gl-lg.com
kevin@gl-lg.com
*Of Attorneys for Plaintiff*